**MERCANTILE NATIONAL BANK AT DALLAS, Plaintiff–Appellee,**

v.

**BRADFORD TRUST COMPANY, n/k/a Fidata Trust Company, Defendant–Appellant.**

No. 87–1264.

United States Court of Appeals, Fifth Circuit.

July 25, 1988.

U.S. at 684, 95 S.Ct. at 1264.

Christopher J. Collins, Maione & Collins, New York City, Raymond E. LaDriere, II, Robert M. Frey, Locke, Purnell, Rain &

Harrell, Dallas, Tex., for defendant-appellant.

John A. Price, Winstead, McGuire, Sechrest & Minick, Dallas, Tex., Walter D. Jones, Irving, Tex., for plaintiff-appellee.

Before BROWN, GEE, and GARWOOD, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The real question is whether a party prevailing in his successful application for declaratory relief is entitled as of course to attorney's fees. We determine that attorney's fees are recoverable by such a litigant only where they are recoverable under non-declaratory judgment circumstances—we hold recovery of attorney's fees is confined to two situations: (i) where, under the restrictive American rule [1] attorney's fees are allowed; and (ii) where controlling substantive law permits recovery. Neither of those two situations is the case here. Consequently, we reverse.

This case arose from the disappearance of a stock certificate that represented 534,035 shares of common stock of Varo, Inc. The plaintiff, Mercantile National Bank at Dallas ("MBank"), is a national banking association with its principal place of business in Dallas, Texas. Bradford Trust Company ("Bradford") is a New York corporation with its principal place of business in New York City. On October 31, 1977, MBank and Bradford entered a written service agreement, whereby Bradford agreed to supply custodial services for stock certificates owned by MBank or its customers. The agreement also provided that its terms were to be governed by and construed in accordance with the laws of the State of New York.

MBank placed the Varo stock certificate in Bradford's custody and, pursuant to the terms of the service agreement, Bradford held the certificate in its New York City

---

1. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

vaults. In July 1983, MBank instructed Bradford to release and return the stock certificate to MBank. Two weeks later, neither party could locate the certificate. To this day, the certificate has not been located. MBank secured a replacement stock certificate and paid $43,602 as a premium for a "sole obligor bond" required by the stock transfer agent before the issuance of a replacement stock certificate. MBank incurred $10,000 in attorney's fees in obtaining the bond.

### Litigation Sets In

MBank brought this diversity action under the Declaratory Judgment Act, alleging that Bradford was responsible for the loss of the stock certificate and that it had negligently breached its contractual and common law duties. MBank sought damages, including pre- and post-judgment interest, court costs and attorney's fees. Additionally, MBank sought a declaratory judgment that MBank was released from all obligations of an indemnity agreement between MBank and Bradford, and that Bradford was liable for any future loss that might result from the disappearance of the certificate. The trial court granted MBank's request for a declaratory judgment, and awarded the following:

| ITEM | | |
|---|---|---|
| 1. | Cost of acquiring the sole obligor bond | $ 43,602 |
| 2. | Interest on bond expenses | 13,000 |
| 3. | Attorney's fees in procuring the bond | 10,000 |
| 4. | (a) Attorney's fees in connection with declaratory suit | 75,000 |
| | (b) Costs, depositions, etc. and post-judgment interest | 8,029 |
| | Total | 149,631 |

Following the entry of judgment, Bradford filed a motion to modify judgment. In its motion, Bradford expressly contested the court's discretionary power to award attorney's fees. Bradford's post-trial position was that in a diversity case brought under the Declaratory Judgment Act, attorney's fees can be awarded only where the underlying state law provides for them. Bradford maintained that controlling New York law does not allow attorney's fees on the claim in this case. The district court considered Bradford's motion to modify, and denied it. Bradford now appeals solely on the issue of whether attorney's fees were properly awarded to MBank.

### Fee For Procuring Bond—Attorney's Fee? or—Consequential Damages?

■ On appeal, Bradford also urges this court to reverse as to Item 3, $10,000 of attorney's fees incurred by MBank in procuring the bond, on either of two grounds. First, that it is an unauthorized award of attorney's fees when controlling substantive law does not permit such an award. In the alternative, Bradford contends that an award of fees for the prelitigation expenses incurred in procuring a replacement certificate are barred as "consequential damages" which are expressly excluded under the written service agreement. We view the $10,000 to be within the scope of expenses directly incurred because of the breach of the contract and hence properly recoverable as direct, not consequential, damages.

The district court's findings reflect that these fees are not fees relating to the litigation. Indeed, the district court made separate specific determinations with regard to the fees arising from the replacement of the certificate and the "cost for employing counsel in the present action" (referring to the declaratory judgment action). The trial court could conclude that the fees in question (Item 3) are damages, direct, not consequential.[2] Unlike the other attorney's fees relating to the litigation, these fees were damages that were specifically provided for under the parties' written agreement.

### Was Bradford's Objection Too Tardy?

■ We must first deal with MBank's initial contention that Bradford cannot con-

---

**2.** Bradford did not raise the issue of consequential damages before or during the trial. This is an additional reason why allowance of Item (3) does not present error requiring reversal.

218

test its liability for attorney's fees (Item 4(a)) on this appeal because the issue was not raised at any time in the pleadings or at trial prior to the post-judgment motion either to modify or amend the judgment. Attorney's fees had been claimed[3] and denied. Bradford's post-judgment motion was not too late or incomplete. The issue of whether attorney's fees (Item 4(a)) are permissible is ripe for decision.

■ To the extent that this question turns on state law, the parties concede that it should be New York law which applies. Indeed, the written agreements between the parties specifically state that the terms thereof are to be governed by and construed in accordance with the laws of New York, and the District Court specifically stated that New York law should control. MBank does not contend that any other state law should apply. Accordingly, we proceed on the assumption that New York law is the pertinent state law.

It is clear that New York follows the American Rule regarding attorney's fees.[4] Under the restrictive American Rule, attorney's fees must be borne by each litigant absent an agreement or statutory authority to the contrary.[5] MBank concedes that there are no contractual provisions which permit attorney's fees.

■ MBank first argues that 28 U.S.C. § 2202[6] provides statutory authority for the award of attorney's fees in this litigation. We disagree. "Further necessary or proper relief" does not provide the requisite statutory authority for a district court to automatically award attorney's fees.

However, as MBank correctly points out, there is one general exception to the rule requiring express statutory authorization. According to Moore's Federal Practice, a district court has "equitable power ... to make awards in addition to regular statutory costs, including a reasonable attorneys' fee...."[7] MBank urges this Court to hold that the District Court has broad discretionary power to award attorney's fees in declaratory actions under 28 U.S.C. § 2202, under this exception to the American Rule.

■ This we decline to do. The full quote from *Moore*'s continues: "This power has been exercised most often in cases involving the creation, protection, or distribution of a fund within the jurisdiction of the court, but is broad enough to permit the award of fees and expenses in certain other rather restricted circumstances." Those other rather restricted circumstances are limited to cases of bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action, or other specific circumstances that are not present in the case at bar.[8] Neither this particular exception nor the language of 28 U.S.C. § 2202 gives the District Court unlimited power to award attorney's fees. And as previously stated, § 2202 does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under state law in a diversity action.[9]

3. In this hotly contested litigation, both sides sought attorney's fees. At the time, there was a dispute not only over which state law would apply to this case, but also as to whether either law would permit recovery of attorney's fees.

4. See *Grand Union Co. v. Cord Meyer Development Co.*, 761 F.2d 141, 147 (2d Cir.1985); *Green v. Potter*, 51 N.Y.2d 627, 629–30, 435 N.Y.S.2d 695, 416 N.E.2d 1030 (1980); *Bregman v. Meehan*, 125 Misc.2d 332, 479 N.Y.S.2d 422, 424 (App.Div.1984).

5. See *6 Moore's Federal Practice*, ¶ 54.78[1] (2d ed. 1987).

6. 28 U.S.C. § 2202 provides:
Further necessary or proper relief based on a declaratory judgment or decree may be grant-

ed, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

7. *Id.*

8. See *Moore's* at ¶ 54.78[3], and cases cited therein.

9. The cases cited by MBank in support of the proposition that § 2202 authorizes attorney's fees fall into two categories. The first is the bad faith litigation category. Those are clearly not applicable here. The second category consists of insurer-insured cases with egregious circumstances existing as a result of the insurer's failure to comply with its duty to defend under the terms of the insurance policy. See *Security Insurance Co. v. White*, 236 F.2d 215 (10th Cir.

There is no contention that attorney's fees in this litigation should be based on bad faith, vexation, etc. As such circumstances are not present, it is clear that under New York law attorney's fees were not recoverable. In the absence of a clearer directive from Congress, we decline to expand the scope of the remedies authorized under § 2202 beyond the express exceptions to the American Rule or explicit statutory directives to the contrary.

REVERSED.

1956); *National Indemnity Co. v. Harper,* 295 F.Supp. 749 (W.D.Mo.1969). In *Security Insurance,* the insurance company, rather than honoring its contractual duty to defend, instituted a parallel action against the insured, asking the court to declare the contractual obligations of the parties. Attorney's fees were awarded because if not for the insurer's improper failure to defend, the insured would not have had to incur attorney's fees in either the principal litigation or in the declaratory judgment action. This line of cases is likewise clearly inapposite.