**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MEREDITH KORNFELD;
NANCY KORNFELD a/k/a
Nan Kornfeld,

        Plaintiff-Counter-Claim-
        Defendants-Appellees,

v.

JULIAN KORNFELD; PATSY D.
PERMENTER, individually and as
co-trustees of Julian P. Kornfeld
Revocable Trust,

        Defendant-Counter-
        Claimants-Appellants.

No. 08-6263
(D.C. No. 5:07-CV-00438-L)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**TYMKOVICH**, Circuit Judge.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Julian Kornfeld and Patsy D. Permenter (defendants) appeal from the district court's judgment granting plaintiffs' motion for attorney fees in the amount of $56,215, plus interest. Exercising jurisdiction under 28 U.S.C. § 1291 we REVERSE and REMAND for further proceedings.

## I. Background

The parties are familiar with the facts and we will not repeat them except as relevant to our discussion. Plaintiffs, who are sisters, sought a declaratory judgment regarding stock-ownership rights in a closely held company, Mernan Royalty Corporation (MRC), that were part of a prior settlement agreement between the parties. Defendants are plaintiffs' father, Mr. Kornfeld, and his assistant, Ms. Permenter. They brought a counterclaim for reformation of the settlement agreement on a number of grounds. The dispute centered on a provision in the agreement that an Employee Stock Ownership Plan (ESOP) owned 12.67% of MRC's voting common stock. Defendants argued that this was a mistake and in fact the ESOP owned 22.55%.

In its first order on the merits, the district court ruled that the agreement should not be reformed and that the ESOP owned 12.67% of the stock. The court ordered further briefing and held a hearing on the percentage of ESOP shares owned by the parties, ultimately rejecting defendants' argument that together they owned about 60% of the ESOP's shares. The court excluded a number of exhibits defendants had not disclosed to plaintiffs during discovery, considered another

-2-

exhibit to be hearsay, and rejected Mr. Kornfeld's hearing testimony as inconsistent with an earlier admission. The court based its decision on the only credible evidence regarding the allocation of ESOP shares among the parties—Mr. Kornfeld's earlier admission and the testimony of one of the plaintiffs, which indicated that each of the plaintiffs and their father owned one-third of the ESOP's shares and Ms. Permenter owned none. *See* Aplt. App., Vol. II at 466-69. Each of the two plaintiffs and Mr. Kornfeld recovered about $33,786 in disputed funds arising from sale of the company, plus interest.

After their success on the merits, plaintiffs moved for an award of $56,215 in attorney fees and costs under 28 U.S.C. § 2202 and various Oklahoma statutes. The requested sum reflected fees and costs for the entire litigation. The district court denied relief under the state statutes but granted the motion under § 2202 for the full amount of the request. The court gave two primary reasons for its award: (1) defendants' "counterclaim for reformation . . . was unsupported in either fact or law" and (2) "[e]ven after the court determined that reformation was not proper, defendants continued to advance positions for which they presented no competent evidentiary support." Aplt. App., Vol. II at 536. In connection with the second rationale, the court referenced the portion of its second merits order, where it had struck the ESOP documents defendants failed to disclose during discovery. The court then stated that due to defendants' actions, plaintiffs were "forced . . . to expend more to enforce their rights than they recovered

individually, and the expenditure of fees by plaintiffs was necessary to secure relief to which they were clearly entitled." *Id.*  The court concluded that "[f]ailure to reimburse plaintiffs for their fees would, in effect, reward defendants for their obdurate behavior." *Id.*

## II. Discussion

Our standard of review in this appeal is mixed.  "While we generally review a [decision regarding] attorneys' fees for an abuse of discretion, we review de novo any statutory interpretation or other legal analysis underlying the district court's decision concerning attorneys' fees." *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997) (citation omitted).  The district court derived its authority to award attorney fees from 28 U.S.C. § 2202, which provides:  "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."  In contesting the award, defendants advance five propositions.  We address each in turn.

**A.  "'Further necessary or proper relief' is not necessary and will never be needed in this case[.]"**  Aplt. Br. at 6 (quoting 28 U.S.C. § 2202). Defendants argue that no further relief was necessary after the district court declared the rights of the parties because the money at issue was placed in escrow and would be distributed once the litigation was final.  The shortcoming in defendants' argument is that the statute is phrased in the disjunctive, "further

necessary **_or_** proper relief."  28 U.S.C. § 2202 (emphasis added.)  At least one

court has observed that the requested relief need not be necessary, it "need only

be proper." *Horn & Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546,

548 (D.C. Cir. 1988).  Because relief need only be proper, it is irrelevant that

there was no need for further relief with respect to the money held in escrow.

    **B.  "The trial court erred in rejecting the American Rule and awarding**

**plaintiffs fees in this case[.]"**  Aplt. Br. at 7.  In support of this argument,

defendants rely on a case from the Fifth Circuit, *Mercantile National Bank v.*

*Bradford Trust Co.*, 850 F.2d 215 (5th Cir. 1988), and an unpublished district

court case, *Lockheed Martin Corp. v. L-3 Communications Corp.*,

No. 1:05-CV-902-CAP, 2008 WL 4791804 (N.D. Ga. Sept. 30, 2008), for the

proposition that § 2202 does not provide the requisite statutory authority to

abrogate the American Rule[1] and "automatically award" fees.  Aplt. Br. at 8.

---

[1]    This court has summarized the American Rule regarding attorney fees:

> Although federal courts have the inherent power to award fees, such
> awards are appropriate only in exceptional cases and for dominating
> reasons of justice.  When a party acts in bad faith, vexatiously,
> wantonly, or for oppressive reasons, a court may properly depart
> from the traditional American rule disfavoring fee awards.  This
> Circuit sets a high bar for bad faith awards, otherwise those with
> colorable, albeit novel, legal claims would be deterred from testing
> those claims in a federal court.  Accordingly, we have insisted that a
> trial judge make a finding of bad intent or improper motive.

*Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 947, 953-54
(10th Cir. 2006) (quotations and citations omitted).

This argument rest on extra-circuit case law that is at odds with controlling Tenth

Circuit precedent.  As this court explained in *Gant v. Grand Lodge of Texas*,

§ 2202

> "permits the court, even in a diversity case, to grant further relief
> although this could not be done in the state courts."  10A Wright &
> Miller § 2771, at 767.  Indeed, this court has specifically held that a
> court has the power in a diversity case to award fees as damages
> under section 2202 even though they are not recoverable under state
> law.  *See Security Ins. Co. v. White*, 236 F.2d 215, 220 (10th Cir.
> 1956).  "[T]he grant of power contained in [section 2202] is broad
> enough to vest the court with jurisdiction to award damages where it
> is necessary or proper to effectuate relief based upon the declaratory
> judgment rendered in the proceeding."  *Id.*

12 F.3d 998, 1003 (10th Cir. 1993) (alterations in original).  Moreover, contrary

to defendants' suggestion, an "automatic award" of attorney fees is not at issue

here.  Accordingly, their second argument is without merit.

**C.  "The limited exception to the American Rule enumerated in *Gant* is

inapplicable in the present case[.]"**  Aplt. Br. at 8.  In this proposition,

defendants rely on the fact that in *Gant*, a second action was brought to enforce

the ruling made in a prior declaratory judgment action, and they reiterate that it

will never be necessary to effectuate the judgment in this case because of the

escrow.  This argument misses the mark.  By its plain language, § 2202 requires

only "reasonable notice and hearing," not a second action.  And while *Gant*

involved a second action four years after the first, the court discussed that fact in

considering whether res judicata applied.  *See Gant*, 12 F.3d at 1002-03.  There is

nothing in *Gant* that requires a second action to obtain "further necessary or proper relief" under § 2202.

Moreover, neither *Security Insurance Co. v. White*, 236 F.2d 215, 220 (10th Cir. 1956), nor the Fifth Circuit case defendants elsewhere rely on, *Mercantile National Bank*, involved a second action. In *White,* after the district court resolved the declaratory aspect of the case, a separate hearing was held on fees, and the court awarded them as part of damages in a single judgment. In affirming, this court was assured that the district court had followed § 2202's requirement of reasonable notice and hearing: "While the determination of the rights and duties of the parties under the policy and the award of damages were included in a single judgment, the chronology of the successive steps leading up to the entry of such judgment satisfied the requirements of the statute in respect to procedure." *Id.* at 220. Similarly, in *Mercantile National Bank*, there was no separate action or proceeding to enforce the declaration. *See Mercantile Nat'l Bank*, 850 F.2d at 217 ("The trial court granted [plaintiff's] request for a declaratory judgment, and awarded" damages and "[a]ttorney's fees in connection with [the] declaratory suit[.]" (quotation omitted)). The basis for reversing an award of attorney fees for bringing the declaratory judgment action was that there was no suggestion defendants litigated in bad faith. *See id.* at 218-19.

In the present case, the district court held a separate hearing on the request for attorney fees and made its award as part of the same case. Procedurally, this was permissible under § 2202, *White*, *Gant*, and *Mercantile National Bank*.

Defendants also rely on *Patton v. Denver Post Corporation*, 379 F. Supp. 2d 1114 (D. Colo. 2005), for the proposition "that § 2202 does not authorize an award of fees absent particular circumstances" because "[t]he expending of fees in pursuit of a declaratory judgment . . . was not listed in *Patton* as a basis for fees." Aplt. Br. at 11. In support, defendants' point to the following passage from *Patton*:

> § 2202 cannot reasonably be read to authorize [attorney fees] to a litigant solely on the grounds that she is a prevailing party. Absent an additional assertion or showing that a fee award is somehow necessary to *effectuate* relief that has already been granted under § 2201, it is not "further necessary or proper relief" under § 2202.

*Patton*, 379 F. Supp. 2d at 1116. Contrary to defendants' contention, there is no "list" in this quote, or elsewhere in *Patton*, of "particular circumstances" that might serve as a "basis for fees." Rather, the court explained that fees might be awarded under § 2202, or other authority, for successfully bringing or defending a declaratory judgment action in cases where the losing party's position was frivolous, illegitimate, or obdurate. The court stated:

> Where it is revealed in an action under § 2202 that the expenditure of fees was, in fact, necessary to secure relief that should never, legitimately, have been denied, there may be grounds under [*White*] (or any other authority, including 28 U.S.C. § 1927) for awarding the

> claimant those fees as having been necessarily incurred to enforce what has then been declared to have been her rights.

*Id.* at 1117. The court found that this "caveat" did not apply because the plaintiff's claim raised a novel question of law, and the case did not involve "illegitimate or obdurate litigation for litigation's sake[.]" *Id.* The court concluded that "Ms. Patton received the benefit she was due under the original declaration of her rights and no 'further' proceeding was necessary to enforce them." *Id.* The court stressed that it was denying the motion for attorney fees because there was no evidence that the defendant's objection to the requested declaration was "frivolous or otherwise illegitimate." *Id.*

*Patton* contains no list of particular circumstances justifying an award of attorney fees under § 2202, or other authority, that would counsel against the award in the present case. *Patton* simply recognizes an exception to its own rule against automatic awards in cases where the losing party's position is "frivolous or otherwise illegitimate" or the litigation is "illegitimate or obdurate litigation for litigation's sake." *Id.* These formulations are echoed in the district court's assessment in this case that defendants' counterclaim was "unsupported in either fact or law[,]" that they "continued to advance positions for which they presented no competent evidentiary support[,]" and that they exhibited "obdurate behavior." Aplt. App., Vol. II at 536. Whether or not the assessment is correct is discussed below in connection with defendants' fifth proposition.

Moreover, *Patton*'s focus on "effectuate," which is taken from *White*, points out another problem with defendants' position and the *White-Gant-Patton* line of cases. Section 2202 does not require that an award be "necessary or proper *to effectuate* relief based upon the declaratory judgment rendered in the proceeding," as stated in *White*, 236 F.2d at 220 (emphasis added), and reiterated in *Gant* and *Patton*. Furthermore, nothing in *White* suggests that attorney fees were spent trying "to effectuate" the judgment. While necessary relief might, as a practical matter, "effectuate relief," it is difficult to see why proper relief, which is at issue here, must do the same.

**D. "The American Rule does not contain an exception where a litigant expends more in attorneys [sic] fees than he recovers[.]"** Aplt. Br. at 11. Defendants argue that because there is no such exception, the district court erred in considering that plaintiffs' attorney fees exceeded the sum that either plaintiff recovered individually. Whether this argument is valid depends on whether § 2202 constitutes an exception to the American Rule that, absent a contractual or statutory basis, attorney fees may not be included as damages. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 249-50 (1975) (explaining that since 1796, the Supreme Court has consistently rejected "the inclusion of attorneys' fees as damages"); *Pub. Serv. Co. v. Continental Cas. Co.*, 26 F.3d 1508, 1522 (10th Cir. 1994) (recognizing exception under the American Rule when there is a contractual or statutory basis for an award of attorney fees as

-10-

damages). We need not resolve this question, however, because it concerns only a small part of the district court's explanation and overlooks the primary rationales—that defendants' counterclaim was unsupported in fact or law and that defendants continued to advance unsupported positions regarding the parties' ownership of ESOP shares after the first merits order. Thus, to the extent it was improper for the district court to consider, under the authority of § 2202, the fact that plaintiffs' combined attorney fees exceeded their individual recoveries, it was harmless error if either of the principal rationales is proper.

We now turn to whether the court's principal rationales were a proper basis for the fee award.

**E.  "The language used by the trial court in its order of December 5, 2008, awarding attorney's fees to the plaintiffs, seems to be result-oriented in favor of plaintiffs and against defendants[.]"** Aplt. Br. at 12. Defendants argue that their case was not "unsupported in either fact or law," as the district court determined, Aplt. App., Vol. II at 536, and discuss the evidence, arguments, and legal authorities that they placed before the court. To evaluate this argument, it is necessary to consider the court's merits orders and the corresponding fee rationales separately.

In the first merits order, the district court rejected defendants' request for reformation of the agreement, concluding instead that the ESOP owned 12.67% of MRC stock as stated in the agreement. On appeal, defendants raised essentially

-11-

the same arguments, and this court affirmed. Although the appellate panel did not explicitly comment on the issue, it is readily apparent that defendants' arguments were not unsupported in fact or law. Defendants produced admissible evidence in support of their arguments, and one legal point in particular seemed to cause the panel considerable difficulty—that the ESOP could not be bound by the settlement agreement because it was not a party to it. Thus, we conclude that the court's finding that defendants' counterclaim for reformation was "unsupported in either fact or law," *id.*, is inconsistent with the record on this point.

Matters are less clear regarding the district court's second merits order and second fee rationale. As described above, in the second merits order the court considered defendants' argument that they owned about 60% of the ESOP shares to be unsupported by any competent evidence. The court struck or excluded much of defendants' proffered evidence because of discovery violations, because it was hearsay, or because it conflicted with prior admissions. The only credible evidence about the division of ESOP shares was Mr. Kornfeld's prior admission, which contradicted his hearing testimony and defendants' position, and the testimony of one of the plaintiffs. In awarding fees, the court's second rationale was that "[e]ven after the court determined reformation was not proper [i.e., in its first merits order], defendants continued to advance positions for which they presented no competent evidence." *Id.* The court characterized defendants' behavior as "obdurate." *Id.*

-12-

From the district court's second merits order and its second fee rationale, it appears the court was of the opinion that defendants' unsupported position regarding ownership of ESOP shares was in made bad faith, which is an acknowledged exception to the American Rule, *see Alyeska Pipeline Serv. Co.*, 421 U.S. at 258-59.[2]  Thus, despite the court's reliance on § 2202, we need not determine the outer scope of a court's authority under the statute.  Instead, we confine our analysis to whether the court properly supported its bad faith rationale.

"The standard for bad faith awards is stringent" and "generally require[s] a finding by the trial judge of subjective bad faith."  *Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984).  Because "the bad faith exception is drawn very narrowly, and may be resorted to only in exceptional cases and for dominating reasons of justice[,] . . . we have insisted that a trial judge make a finding of bad intent or improper motive by the guilty party before awarding attorneys fees."  *Id.* at 1437 (quotation omitted).

In this case, the district court's explanation is not sufficient for us to determine whether defendants' position on the parties' ownership of ESOP shares after the first merits order exhibited subjective bad faith or was advanced with

---

[2]     There are also exceptions for when a party acts "vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline Serv. Co.*, 421 U.S. at 259 (quotation omitted), but it does not appear the district court relied on any of those. However, on remand, the court could consider whether any of those exceptions apply.

bad intent or for an improper motive. Therefore, we remand this case for the court to make more specific findings on whether defendants' conduct after the first merits order exhibited bad intent or improper motive. If the court finds that it did, the court can determine the amount of fees and costs attributable to that conduct, if any.

### III. Conclusion

The judgment of the district court is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this Order and Judgment. The motion to supplement the appendix is denied.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge